UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNSON-LANCASTER AND ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TB BALLSTON, LLC, *et al.*, <br><br> Defendants. | Case No. 20-cv-1565 (CRC) |

## MEMORANDUM OPINION

Many local readers will have dined at one of several Ted's Bulletin neighborhood eateries in the Washington, D.C. area. This breach-of-contract lawsuit involves the chain's latest outpost in Arlington, Virginia. Plaintiff Johnson-Lancaster and Associates, Inc. alleges that the restaurant's operating company, TB Ballston, LLC, failed to make full payment for equipment that Johnson-Lancaster furnished to the new establishment. It seeks the balance due on several invoices, plus interest and attorney's fees, from both TB Ballston and its corporate parent, Ted's Bulletin Holdings, LLC. Despite what appears to be proper service as to both entities, neither has responded to the Complaint or to an entry of default by the Clerk of the Court. Johnson-Lancaster thus moves for a default judgment against each defendant. Finding the requirements for default judgment have been met, the Court will grant the motions in large part.

### I.   Default Judgment Standards

Obtaining a default judgment is a two-step process. See Boland v. Cacper Constr. Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015). A plaintiff first must request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The Court then decides whether an entry of default judgment is warranted. Fed. R. Civ.

P. 55(b).  Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party."  Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011).  "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  Id.  After establishing liability, the Court makes an independent evaluation of the damages award, which it has "considerable latitude" to determine.  Id.  The Court may hold a hearing if necessary or can rely on "detailed affidavits or documentary evidence" submitted by plaintiffs in support of their claims.  Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

## II.  Analysis

### A.  Liability

Johnson-Lancaster filed this suit on June 15, 2020 seeking damages against TB Ballston, LLC and Ted's Bulletin Holdings, LLC for breach of contract and unjust enrichment.  The Complaint alleges that Johnson-Lancaster is a Florida corporation, that both defendants are Delaware limited liability corporations with their principal offices in Washington, D.C., and that the amount in controversy exceeds $75,000.  Compl. ¶¶ 1-4.  The Complaint thus adequately invokes the Court's diversity jurisdiction[1] and locates proper venue in Washington, D.C.  Plaintiff's counsel has also executed affidavits establishing proof of service as to both defendants.  ECF Nos. 7, 8.  Attached to the affidavits are returned, certified mail receipts

---

[1] Federal diversity jurisdiction would be defeated if any constituent member of either LLC defendant was a citizen of Florida, notwithstanding that the LLCs are organized under Delaware law.  See BGC Partners. Inc. v. Avison Young (Canada) Inc., 115 F. Supp. 3d 119, 125-26 (D.D.C. 2015) (Cooper, J.).  However, because the defendants are not available to confirm their citizenship, the Court will assume that diversity jurisdiction lies for purposes of the present default judgment motions.

indicating that the summons and complaint were delivered to both defendants through their president at the companies' Washington, D.C. business address. Id. Delivery of a summons and complaint by certified mail, at least by non-pro se plaintiffs, is an acceptable means of effecting service of process on defendants located in the District of Columbia. See Fed. R. Civ. P. 4(e)(1), (h)(1)(A) (service may be made on an individual or corporation by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"); D.C. Super. Ct. R. Civ. P. 4(c)(4) (authorizing service by registered mail).[2] Accordingly, the Court has jurisdiction over the case.

After the defendants failed to file an answer or otherwise respond to the Complaint within the applicable deadlines, Johnson-Lancaster obtained an entry of default from the Clerk of the Court on July 28, 2020. The company then filed the present default judgment motions, accompanied by affidavits from its general counsel, Jason Manor, attesting to the veracity of the allegations in the Complaint. Because the Clerk of the Court has entered default and the defendants still have not appeared in the case, the Court accepts as true the Complaint's well-pleaded allegations and the facts set forth in Mr. Manor's affidavit. Those facts and allegations establish the following narrative.

In October 2018 and June 2019, Johnson-Lancaster contracted with TB Ballston to furnish and install equipment for a new Ted's Bulletin restaurant in Arlington, Virginia. Manor

---

[2] Generally, the person who serves a federal complaint must not be a party to the case. Fed. R. Civ. P. 4(c)(2). Another judge in this district recently held that under this federal rule, a pro se plaintiff in federal court may not serve a defendant by personally mailing a complaint and summons, even if the forum state would allow that method of service under state law. Johnson-Richardson v. Univ. of Phoenix, 334 F.R.D. 349, 354 (D.D.C. 2020). Regardless of whether that holding is correct, the issue does not arise here because the person who effected service was an attorney for Johnson-Lancaster, not a party to the case.

Aff. ¶¶ 4-5, ECF No. 14-1.  The total price for the agreed project was $422,639.01.  Id. ¶ 6; Compl. Exh. A at 43 (quote for $422,639.01).  TB Ballston's parent company, Ted's Bulletin Holdings LLC, guaranteed full payment pursuant to a separate agreement.  Id. ¶ 19; Compl. Exh. C.  Johnson-Lancaster substantially completed the project on or about July 2, 2019.  Manor Aff. ¶ 8.  TB Ballston accepted the equipment and installation.  Id. ¶ 10.  Johnson-Lancaster invoiced TB Ballston for the materials and labor provided, including a $126.50 charge for what appears to be a maintenance visit in August 2019 not included in the $422,639.01 quote.  Id. ¶ 12; Compl. Exhs. A, B.  As of the filing of the default judgment motions in August 2020, TB Ballston had paid or received credits for $197,100.20 of the invoiced amount, leaving a balance due of $225,665.31.  Manor Aff. ¶ 13; Compl. Exh. A at 1.

The above facts support a finding of liability on the part of TB Ballston, and Ted's Bulletin Holdings as a guarantor, for either breach of contract or, if for some reason there was no valid contract, unjust enrichment.

B. Damages

The Court turns next to damages.  Mr. Manor's affidavit, along with the attached invoices, is sufficient to establish that Johnson-Lancaster has suffered damages in the amount of the unpaid balance on the invoices, or $225,665.31.  The Court will therefore award that amount in damages.

Johnson-Lancaster also seeks pre- and post-judgment interest "at the legal rate."  Mot. for Default J. as to TB Ballston at 2; Mot. for Default J. as to Ted's Bulletin Holdings at 2.  The Court will separately address Johnson-Lancaster's request for pre-judgment interest and its request for post-judgment interest.

In analyzing the request for pre-judgment interest, the Court must begin by applying District of Columbia choice-of-law principles to determine which state's substantive law governs damages in this case. See Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 51 (D.D.C. 2002) ("A federal court must apply the choice-of-law rules of the jurisdiction in which it sits to determine the body of law that should govern substantive matters. Substantive matters include both damages and pre-judgment interest, which is considered an aspect of damages." (citation omitted)). Where a contract does not specify the substantive law to apply, as appears to be the case here, D.C. courts "conduct a 'governmental interest' analysis to determine which jurisdiction's law controls the interpretation and enforcement of the contract." Adolph Coors Co. v. Truck Ins. Exchange, 960 A.2d 617, 620 (D.C. 2008). The relevant factors include "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; [and] (5) the residence and place of business of the parties." Id.

Based on the facts presented by Johnson-Lancaster and accepted by the Court, TB Ballston—a company with its principal office in D.C.—contracted to receive goods and services in Virginia. TB Ballston's end of the bargain, which it partially failed to perform, was to pay Johnson-Lancaster's invoices, which presumably were sent to TB Ballston's D.C. office. See Compl. Exhs. A, B (invoices reflecting TB Ballston's D.C. office address). Meanwhile, TB Ballston's D.C.-based parent company, Ted's Bulletin Holdings, agreed in D.C. to guarantee payment on the sales contract. Compl. Exh. C (corporate guarantee notarized in D.C.). These facts show that both D.C. and Virginia have some interest in the contract at issue. On balance, however, D.C. is the jurisdiction with the most significant connection to the dispute. At bottom,

this case is about a corporate decision made in D.C.—the defendants' choice not to pay Johnson-Lancaster the full amount due. The Court will therefore apply D.C. substantive law.

D.C. Code § 15-108 provides,

> In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

D.C. law thus "provides for prejudgment interest in actions 'to recover [1] a liquidated debt [2] on which interest is payable by contract or law or usage.'" Parker v. U.S. Trust Co. N.A., 236 A.3d 423, 431 (D.C. 2020) (quoting D.C. Code § 15-108); see also Steuart Inv. Co. v. The Meyer Group, Ltd., 61 A.3d 1227, 1240-41 (D.C. 2013) (pre-judgment interest is "mandatory" under the conditions set out in § 15-108). "Unless a rate is specified by contract, interest under Section 15-108 accumulates at the rate of 6% per year." Klayman v. Judicial Watch, Inc., No. 06-cv-670 (CKK), 2019 WL 1244079, at *29 (D.D.C. Mar. 18, 2019) (citing D.C. Code § 28-3302(a)). "That interest accrues 'on the principal debt,' and is 'ordinarily not compounded in the absence of contract provision.'" Id. (first quoting D.C. Code § 15-108; then quoting Giant Food, Inc. v. Jack I. Bender & Sons, 399 A.2d 1293, 1304 (D.C. 1979)).

This case satisfies both conditions for mandatory pre-judgment interest under § 15-108. First, the money owed to Johnson-Lancaster constitutes a liquidated debt. "A liquidated debt is one which at the time it arose was an easily ascertainable sum certain." Parker, 236 A.3d at 431. Here, TB Ballston failed to pay the fixed, ascertainable sums recorded in Johnson-Lancaster's invoices. Second, "interest is payable by . . . usage" on the unpaid debt in this case. D.C. Code § 15-108. "Under District of Columbia law, 'it is indeed customary to pay interest on funds that are withheld and not paid when due.'" Bazarian Int'l Fin. Assocs. LLC v. Desarrollos Hotelco,

6

C.A., 342 F. Supp. 3d 1, 24 (D.D.C. 2018) (quoting Bragdon v. Twenty-Five Twelve Assocs. L.P., 856 A.2d 1165, 1172 (D.C. 2004)).

The record shows that TB Ballston has owed Johnson-Lancaster $225,665.31 since at least April 1, 2020.  See Compl. Exh. A at 1 (most recent invoice).  The Court will therefore calculate pre-judgment interest from that date.[3]  At a rate of 6 percent per year, $9,681.97 in interest has accrued on the $225,665.31 principal between April 1, 2020 and the date of this judgment.

Unlike pre-judgment interest, "[p]ost-judgment interest is governed by federal law, even in a case in which a federal court hears only state-law claims."  Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea, 962 F. Supp. 2d 152, 165 (D.D.C. 2013).  The governing federal statute provides in relevant part:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. . . .
> (b) Interest shall be computed daily to the date of payment . . . and shall be compounded annually.

28 U.S.C. § 1961.  For judgments entered between December 14 and December 20, 2020, the post-judgment interest rate is 0.10 percent.  See Selected Interest Rates (Daily) - H.15, Federal Reserve, https://www.federalreserve.gov/releases/h15/ (last accessed Dec. 17, 2020).  The Court will therefore award post-judgment interest at that rate.

---

[3] Because Johnson-Lancaster submitted multiple invoices, it appears that parts of TB Ballston's debt came due earlier than April 1, 2020.  Although the record contains a copy of each invoice, the Court lacks sufficient information to determine the precise date on which each payment became late and thus began to accrue interest according to the business customs of D.C.  Calculating interest on the entire balance from April 1, 2020 will produce a realistic, if somewhat conservative, estimate of the total interest owed.

Finally, Johnson-Lancaster seeks reimbursement of attorney's fees.  However, absent a statutory or contractual entitlement to attorney's fees, the so-called American Rule generally precludes parties from obtaining fees after prevailing in litigation.  <u>Baker Botts L.L.P. v. ASARCO LLC</u>, 576 U.S. 121, 126 (2015).  Because Johnson-Lancaster cites no such overriding legal provision here, the Court declines to award fees.

### III.     Conclusion

For the foregoing reasons, the Court will grant in part plaintiff's Motions for Default Judgment.  The Court will enter judgment in favor of Johnson-Lancaster and against both defendants, jointly and severally, in the amount of $235,347.28—consisting of $225,665.31 for the unpaid balance on the contracts and $9,681.97 in pre-judgment interest—plus post-judgment interest under 28 U.S.C. § 1961.  Plaintiff's request for attorney's fees will be denied.

Date: <u>December 18, 2020</u>                                                    CHRISTOPHER R. COOPER
                                                                                                  United States District Judge